May it please the Court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office, and I represent Kenneth Sandidge on this appeal. It is his second appeal in this case, and in it he is challenging the District Court's wrongful imposition of a supervised release condition requiring him to refrain from, quote, excessive use of alcohol. The condition is vague because the judge didn't define the word excessive in a way that provides clear notice through objective terms about what is prohibited. Of course, that is required under this Court's case law in Adkins. An objective term is something that defines excessive by stating a blood alcohol content. The District Court did that, but then it strayed into other definitions that are highly subjective, and that's the problem here. They are all binding, they're all applicable, and Mr. Sandidge must follow them all, and he is left to guess what is the meaning of excessive ultimately based on how the condition is written and how it was imposed. Specifically, the Court may Suppose the condition instead of adversely affects had said materially affects. Same problem? Yeah, that's what worries me about your argument, because lawyers have been saying that the word materially is too vague for hundreds of years, and the judiciary always rejects that argument. There's some irreducible vagueness in the language that more words won't solve. I disagree. And materially is given as an example of that. Adversely seems to me about the same category. Throwing more words at it won't make it more precise. But there is a way to make it more precise, and it's easily done. You just state the blood alcohol content. Problem solved. Yeah, you can delete it. And similarly, from all the criminal statutes that use the word materially, you could delete it. But proposals to do that, proposals that the statute is too vague with the word in, have always failed. So why would this be, if you agree that this is just the same as materially, why would it be worse than materially? I don't think this Court's accepted definition in these contexts to say that materially is acceptable, so there would be tension in the case law that would result from your Honor's proposed solution. It's not as if those statutes, because they aren't written in a way that could be written better in this context, are therefore appropriate. We are looking at the specifics of this case in 18 U.S.C. 3583d, the governing standard. And it talks about the imposition of conditions that do not impact somebody's rights more than necessary. So irrespective of what those statutes say and what terminology they use, spongy as it is materially and so forth, under 3583d, the condition in this case could be more appropriately drafted, more precisely drafted, and I've given an example of how. It shouldn't be that the District Court rejects it because materially in some other context has been found to be acceptable, and not to mention, as I mentioned, the tension in other cases in this area where amorphous terms like this, spongy terms like this, are rejected. We can look to 3583d, we can look at how precisely this term could be imposed, and we find a better solution simply by including blood alcohol content as stated in the condition. It's by delving into the additional matters that we have the problems that this Court has flagged about inefficiency, possibility of inconsistent law enforcement. All of those things come to the fore, they're easily avoided. And as I began to say, banning excessive use of alcohol that adversely affects a defendant's employment or relations interjects another variable here. Every defendant doesn't have a relationship with the same employer or the same persons for purposes of the relationships requirement. So, the permissible amount of use depends then on who Mr. Sandage works for and who his relationship is with, and that is going to differ for each person, each defendant, under any condition of supervised release. We should, again, avoid that by just having a clear condition of supervised release. What we have now is a shifting and unknowable standard. Due to the lack of clear notice and objective terms, this Court should vacate the condition and remand so that an appropriate condition that is specific and gives notice can be imposed, and again, that's easily achievable here by simply saying blood alcohol content as opposed to excessive use or anything else. Mr. Chellis, is your position that it only can be specific enough if it has blood alcohol content? Is there no other language that you would suggest could satisfy you? I'm not saying that that is to the exclusion of any other possibility. I am simply saying that that is definite, it is knowable, it is something that I think satisfies. If there's something else that might satisfy, I couldn't tell Your Honor what it is off the top of my head. But I do know that by having something that is equatable, that is through blood alcohol content, it's definable and knowable, we avoid things like materially, like excessive, and the things that have been found to be problematic. And again, if under 3583D the purpose is to not restrict more than necessary, not using terms like materially and excessive is consistent with the statute. And so that's what we should go for here. So it's your position that the individual, if possessed of the direction to not have over 0.08, that would be sufficient? I think so, Your Honor, for purposes of our challenge here today. All right. Thank you, Mr. Chellis. Thank you. I reserve the balance of my time. Good morning, Your Honor. May it please the Court. Nathaniel Whalen on behalf of the United States of America. Mr. Whalen. Let me pick up where you just left off. A condition that prohibited Mr. Sandage from drinking 0.08 or above wouldn't be enough in this case, and let me explain why. When Mr. Sandage was arrested in this case, officers found a woman running down Gary, Indiana Street at 3.30 in the morning after he had just sexually assaulted her. According to their testimony, they'd had a few drinks. Now, Mr. Sandage is about 195 pounds, and so let's say a few drinks is two drinks or three drinks. It's entirely conceivable that his blood alcohol level would be below 0.08 at that point. So what Mr. Sandage is proposing in this case is a condition basically that wouldn't let probation step in, in that particular instance, on blood alcohol level. Probation would have been able to step in on other violations. If he's dangerous when drinking, why not just a complete ban? Yeah, that's a good question, Your Honor, and we did consider it. When this case was remanded for resentencing, what was going on, as this Court knows, there was the Thompson, Kappus, Siegel line of conditions of supervised release cases, and I think what the probation ñ well, let me first say that the evidence isn't in the record as to that instance, but the answer that I can give you is what probation was trying to do is they were trying to work with Mr. Sandage to give him. Well, that may be, but we're not sitting in judgment of the probation office's motivations or intentions. We have to decide whether on its face this is a vague condition, and it seems to me it's very plainly a trap. I don't believe it is a trap, Your Honor. I think it's a condition. It can mean anything the probation officer thinks it means, any adverse, any use of alcohol that adversely affects his employment, his relationships, or his ability to comply. Well, Your Honor, it's a lot. That's about as loose as it can be. Your Honor, it's about along the same lines as conditions like knowingly associated or dangerous weapon, which this Court has affirmed, is both narrow andó That's very different. That's a very poor analogy. Well, Your Honor, I respectfully disagree. I think what it does is it provides the defendant some general notice of what conduct is prohibited, which is what this Court's case law requires, while at the same time giving probation the flexible tool to step in when Mr. Sandage is reaching the point where he might be self-destructive or destructive to others. It is subject to interpretation. I agree with that. But a lot of conditions of supervised release are, and that isn't the standard. What Mr. Sandage is asserting is he's asserting this condition is so vague it's to violate the Constitution. He's saying this is a due process violation. Yeah, because it's susceptible of arbitrary enforcement. Your Honor, it is susceptible to enforcement by the probation officer that could be questioned when reached at the district court level. I agree with that. But as this Court's recent cases have talked about, a mere hypothetical concern doesn't rise to the level of the type of ---- That's not how due process challenges are evaluated. Your Honor, this Court in Douglas did talk about how if you're talking about a hypothetical situation, you're opposing situations that may be the probation. No, we have to look at this language and see if it leaves too much room for arbitrary enforcement and doesn't give him enough notice about what's prohibited. I agree with that, Your Honor. There's a clause about any use of alcohol whatsoever that adversely affects. So, you know, if his drinking one night makes him two minutes late for work the next day, is that enough of an adverse impact? I don't think a reasonable person would believe that that is enough of an adverse impact. Okay, but in the meantime, the probation agent can say, yes, it does, or throw him in prison or throw him in detention and, you know, convene a hearing, and the judge can say, no, that's not enough. But in the meantime, he's detained. Sure, and there is the theoretical possibility of that, Your Honor. I will concede that point. But that doesn't necessarily mean that it's unconstitutionally vague, and it doesn't mean that it's the type of condition that this Court should reverse on. Why not? Well, Your Honor, this Court in its recent cases, Miller and Douglas, has talked about just some hypothetical possibility of a vindictive probation officer violating someone for violating a condition isn't enough to merit reversal. There's going to come a time where Mr. Sandage is released. Mr. Sandage can move to change the condition at that point if he thinks that it's appropriate. If the District Court, in reviewing the record of Mr. Sandage's time in jail, and the District Court, in looking at Mr. Sandage when he's released, thinks that that is appropriate, the District Court could do that. To Your Honor's first point, the District Court could theoretically also impose a complete ban, assuming it complies with all the statutory requirements and the requirements of the rules. But at this point in time, I don't think this condition does rise to the type of due process violation that this Court's case law has talked about recently. The fact that he might also violate, just kind of an ancillary point, the fact that he might also violate the condition doesn't mean he's going to be thrown in jail. That's just, there are steps in between there. And what could happen is the probation officer could step in and say, Mr. Sandage, I do think you're violating. Okay, again, that's not how due process claims are evaluated. This is a legal question about whether this terminology, as a definition for excessive drinking, is unconstitutionally vague because it doesn't give him notice about what he's prohibited from doing and leaves too much room for arbitrariness. I understand Your Honor's points. What I'm saying is, in terms of the cases like Douglas, that analysis does play into a due process challenge of a condition of supervised release. This Court has looked at the possibility of a hypothetical concern that if you go out and you have a drink with your girlfriend and she breaks up with you, a probation officer could theoretically violate you for that. This Court looked at that type of analysis in Douglas and it said, it could theoretically be a concern. We could have the vindictive probation officer who does that, but that doesn't make it a reversible condition at this point in time. In particular, what Mr. Sandidge is actually asking for here is he wants a condition that prohibits him, that gives him unfettered rights to drink up until .08. I think if you look at his criminal history, if you look at his eight previous convictions that involve alcohol one way or another, that just isn't enough. Well, then you could have asked for something stronger. That's true, Your Honor. Poor choice of words in this context, but you know what I'm driving at. Yes, I understand. You could have said, no alcohol. I understand, Your Honor. Or de minimis, .2. Well, what the district court, and we could have asked for that, but what the district court was trying to do is it was trying to give Mr. Sandidge some leeway, and so it looked at this Court's cases in Siegel and Baker. And this is a definition this Court set out in Siegel and Baker. No, there was no approval of this definition in either of those cases. Absolutely. The Court did not approve it in Baker, and the Court did set it as a possibility that could be imposed, admittedly without ruling on the constitutionality and explicitly not ruling on the vagueness of it. But the question is whether the district court abused its discretion in whether this condition is unconstitutionally vague. It's the position of the government that the district court didn't, and it isn't unconstitutionally vague, and we would ask that you affirm, unless this Court has any further questions. Thank you, Your Honor. Mr. Hills. I'd like to begin with the possibility of a complete ban on alcohol use and point out to the Court that that is obviously going to pose First Amendment concerns under the free exercise clause because individuals, as part of their religious liberties, have the right to use alcohol as part of religious celebrations, such as in Purim, or if they're a Roman Catholic at the celebration of the Eucharist. So a complete ban on alcohol use is not going to fly is my concern. Are you familiar with the Peyote case where the Supreme Court held that it is permissible under the First Amendment to ban a church's sacrament? I think we cannot put alcohol in the same category as peyote for purposes of that analysis. Alcohol is a legal substance, Your Honor. Aside from that, come a time when Mr. Sandage is released, we shouldn't have to wait to challenge that. This Court's authority under United States v. Monterico-Johnson says the condition is in effect now. Its supervised release has been imposed. You have counsel. This is the time to raise the challenge. We are raising the challenge now. It should be adjudicated now. Furthermore, per Siegel, why impose these conditions now when this guy is going to be in jail for 10 years, not knowing what his needs and requirements are makes little sense to me. I believe I'm a broken record on this, but I'm going to play it anyway. Impose the conditions later. When, under the best practices of Siegel, it says, wait and see what his history is then, what his needs and requirements are then. Tweak the conditions then, or rather impose them now, as opposed to doing the things in the fashion that we're doing it, and yet the efforts in that regard seem to fall flat. For all the changes in supervised release, I think that is still a major problem, and I would suggest that it be done differently. Well, we have to deal with cases, though, where incarceration is shorter, and it would be appropriate to have a condition of supervision in place before. Absolutely. I'm sure you would agree. I mean, I understand the facts of this case. Right, and in those cases, that would be fine. Different facts, different circumstances, different process, but then we'd still come up and challenge the condition then, and it would be in place sooner. But here, when there's a longer sentence, the practice and the process maybe should be different. Well, in the sense that we sometimes speak to other cases off the facts of a particular case. I would ask you this, Mr. Hillis. And I think there's some redundancy in this drafting in any event, and I have some unease with relationships. I'm sympathetic to your position there. But if we had a case where we said any use of alcohol that adversely affects employment status, in other words, would that be the kind of warning to an individual that in the employment setting you ought to reflect upon any drinking? Would that be a pretty strong signal if you said that? I would be concerned, again, about employment status and what that means and vagueness about your status. That's just not apparent to me what that would mean, as Your Honor poses the hypothetical. I'm concerned about things like Judge Sykes said, about if you use alcohol and you're two minutes late to work, or you work at a place where they don't want you to drink and yet you have a right to drink and so in your off hours you drink, but that adversely affects your employment status. Those are the sort of things. Or more amorphous, your relationships with others, people who are not your employers, people who might not want you to drink because they don't think it's in your best interest for your health, your doctor, for instance, a family member. These are all things that are thrown into the mix through this drafting. If we want to have definiteness, if we want to have sufficient notice, doing things to eliminate that sort of language, Judge Flom, I think is the best practice. Pick a standard that is tied to something that's knowable, like blood alcohol content, and if it becomes problematic and something additional needs to be done, revisit the condition then. You can bring an individual in then to look at what must be done as part of his supervision. These efforts here are too broad and too unknowable. But would you allow then, in your view, a blood alcohol content below that which is prescribed for drunk driving? The district court has wide discretion under 3583D, but of course there's a countervailing consideration about the individual's rights. So if we're going to dial this back and try to say no alcohol, we're going to have a problem. If the amount is too low, and just for this court's consideration, I think the word use alcohol is a poor choice. Say consumption of alcohol. Alcohol is not always alcohol that needs to be consumed. Alcohol can be used for other things. If you have a job where you serve drinks and so forth. It's just poor drafting. And again, it can be easily fixed. I have nothing further. Thank you. The case is taken under advisement. Thank you, Mr. Whelan. And we will proceed.